KIRK v. DU BOIS.

*(Circuit Court, W. D. Pennsylvania. December 27, 1887.)*

1. PATENTS FOR INVENTIONS—UTILITY—PRESUMPTION.
    The presumption of utility arising from the patent itself is sufficient in favor of the patentee until rebutted by proof.
2. SAME—ANTICIPATION—MOVABLE DAMS.
    The device called a new and useful improvement in movable dams, covered by letters patent No. 268,411, issued December 5, 1882, to Arthur Kirk, was not in use by John Du Bois before the date of the patentee's invention.
3. SAME—INFRINGEMENT—MOVABLE DAMS.
    Claim 6 of such patent, described as a bear-trap dam, having a relieving or open sluice extending from under the gates, so as to relieve them from unnecessary pressure, is infringed by the device shown to have been manufactured by defendant, John Du Bois.

In Equity. On bill for injunction.

Plaintiff, Arthur Kirk, filed his bill for an injunction and account against defendant, John E. Du Bois, for the infringement of a patent.

McKENNAN, J. The complainant is the patentee to whom was issued letters patent No. 268,411, dated December 5, 1882, for a new and useful improvement in movable dams. The patent covers ten claims, only one of which (the sixth) is alleged to have been infringed, and is therefore the subject of this controversy. That claim is in the following words: "(6) A bear-trap dam, having a relieving or open sluice extend-

ing from under the gates, so as to relieve them from unnecessary pressure; substantially as and for the purposes described." In the specification this relieving device is thus described: "In the end wall of the dam I make an open sluice, water-way, or tail-race, 38, Fig. 2, at such height as will permit all water which is not required to sustain the gates to escape from under them. When the gates are down, as shown in Fig. 1, the water is admitted by the wickets under them. This raises and floats them up until they reach the position shown by Fig. 2. By that time the water, having reached the sluice, 38, which passes through the wall around the end of the gates, will flow freely through, sustaining the gates at that level." "A modified construction of the sluice is shown by Fig. 4, where the outlet, 39, in the wall is below the level of the water, the latter passing through the outlet, 39, into a forebay or well, 40, and thence over the bridge, 41. * * * It is apparent that the form, place, and details of construction of the sluice for relieving the gates from excessive pressure below can be varied by the skilled constructor; but in all cases an open channel will be necessary when the water has reached a certain height or pressure under the gates."

It thus appears that the whole object of the invention was to regulate the hydrostatic pressure under the gates or leaves of a bear-trap dam, so as to raise and retain them at the desired height or level; and if it does not appear that this desirable object was accomplished by any analogous method before the patentee conceived and described the means of effectuating it, he is fairly entitled to all the benefits his patent was intended to confer upon him. Three grounds of defense are set up and insisted upon by the respondent.

(1) That the alleged invention is not useful, aside from the desirability of the result contemplated by the patentee, and hence the ostensible value of any means conducing to its production. It is sufficient to say that no proof was presented by the respondent on this subject, and that therefore the presumption of utility arising from the patent itself is enough, without more, to meet all the requirements of the complainant's contention, and that he is entitled to the uncontroverted benefit of it.

(2) That the patented device was in use by the late John Du Bois before the date of the alleged invention by the patentee. It is alleged that this device was embodied in a dam described as the "Chamber of Commerce Dam," and was in use there on the twenty-third of December, 1879. On that day several members of the chamber of commerce of Pittsburgh and other persons, among whom was the complainant, visited this dam for the purpose of inspecting and examining it, and all of them who were witnesses testified that no such device as that described in the patent was then connected with it. On the other hand, quite a number of witnesses who had been in the employment of John Du Bois testified that a relieving device substantially similar to the complainant's was then and there in use. In view of all the surrounding circumstances, we are of opinion that the testimony in support of the complainant's hypothesis preponderates. And this conclusion is confirmed by what transpired in the course of proceedings in the patent-office. In the spring of 1881

John Du Bois and Arthur Kirk each filed applications in the patent-office for an improvement in bear-trap dams, as described in the claim in controversy here. They were adjudged to interfere with each other, and an interference was accordingly declared between Kirk and Du Bois. After the taking of testimony and the hearing of the parties, the examiner of interferences decided "the question of priority of invention in favor of Kirk." From this decision Du Bois, in writing, waived his right of appeal. Now, although this decision was not conclusive against Du Bois, yet the decision itself, coupled with his acquiescence in it, is strongly persuasive that it was right. But an averment of decisive significance is made in the preliminary statement by Du Bois filed in pursuance of the requirement of the office. In that he says "that as yet (October 10, 1881,) he has made no model and has built no dam similar to that shown in his pending case." How, then, is it credible that the contested invention could have been embodied in the chamber of commerce dam as early as December 23, 1879? In view of all this, we must conclude that the testimony in behalf of the defendant is of the most doubtful character, and that the weight of all of it is with the complainant; and that this part of the defense must fail.

(3) Has the defendant infringed the complainant's patent? The proofs, in our judgment, demonstrate that he has. But we do not propose to discuss this question at any length or in any detail. It is sought to differentiate the complainant's and the defendant's methods by the argument that the complainant's provides for the overflow of the surplus water on the side of the dam opposite to that where it enters it, while in the defendant's the overflow is on the same side at which the water enters. But the difference in location is immaterial, as the function performed, the result attained, and the mode of operation, are the same, so far as the essential purpose of the invention is concerned.

Upon the whole case a decree must be entered in favor of the complainant for an injunction and account, with costs.